**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie Blanch Lapointe,<br><br>         Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>         Defendant. | No. CV-22-08168-PCT-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Valerie Blanch Lapointe's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review. The Court has reviewed Plaintiff's Opening Brief (Doc. 14, "Pl. Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 18, "Def. Br."), Plaintiff's Reply Brief (Doc. 19, "Reply") and the Administrative Record (Doc. 11-1, "R."), and now affirms the Administrative Law Judge's ("ALJ") decision. (Doc. 11-1.)

**I.   BACKGROUND**

   **A.   Factual Overview**

Valerie Lapointe was 54 years old at her date last insured. (Doc. 14 at 2); (R. 642.) She has a high school education. (Doc. 14 at 2); (R. 642.) Her past relevant work included employment as a telephone solicitor, a sedentary, semi-skilled job. (Doc. 14 at 2); (R. 642.) She also previously worked as a payroll clerk and eligibility worker, also sedentary positions. (R. 642.) The ALJ decision assumes that Lapointe could return to her prior work

as a telephone solicitor. (Doc. 14 at 2); (R. 642.) The ALJ recognized that Lapointe has "severe impairments: obesity, myofascial pain syndrome, alcohol dependence in remission, status post right shoulder surgery, left shoulder impingement disorder, degenerative disc disease, bipolar disorder, anxiety disorder, and depressive disorder." (Doc. 14 at 3); (R. 635) (emphasis removed).) Lapointe's current appeal is focused only on her mental impairments, including her bipolar disorder, anxiety disorder, and depressive disorder. (Doc. 14 at 3.)

Lapointe filed an application for Social Security Disability Insurance ("SSDI") benefits on March 8, 2013, based on disability that began on April 16, 2012. (Doc. 14 at 2); (R. 17.) Lapointe was last insured for SSDI benefits on December 31, 2017. (Doc. 14 at 2); (R. 17.)[1] After state agency initial and reconsideration denials, the Administrative Law Judge ("ALJ") issued an unfavorable decision on February 25, 2015. (Doc. 14 at 2); (R. 14-33.) The Social Security Administration Appeals Council denied review of the ALJ decision. (Doc. 14 at 2); (R. 1-6.) Lapointe appealed, and this Court issued an Order remanding Lapointe's case for further proceedings. (Doc. 14 at 2); (R. 757-72 (*Lapointe v. Comm'r of Soc. Sec. Admin.*, No. 16-cv-02745-DLR (D. Ariz.)), R. 773-77 (Appeals Council Order, dated November 6, 2017.))

After a new hearing, the ALJ issued another unfavorable decision on July 5, 2019. (Doc. 14 at 2); (R. 630-55.) This became the final agency decision when the Appeals Council denied a request for review of that decision. (Doc. 14 at 2); (R. 618-25.) This appeal is authorized by 42 U.S.C. § 405(g), which provides that a reviewing court may affirm, modify, or reverse the agency decision "with or without remanding the cause for a rehearing."

### B. The SSA's Five-Step Evaluation Process

To determine whether a claimant is disabled under the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a); *see Popa v. Berryhill*, 872 F.3d 901, 905-06 (9th Cir. 2017). The claimant bears the burden of proof on the first four steps, but the

---

[1] A claimant for SSDI benefits must establish disability prior to the date last insured. *Lester v. Chater*, 81 F.3d 821, 825 (9th Cir. 1996).

burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id.*

### C. The ALJ's Application of the Factors

Addressing the ALJ's application of the factors, the claimant last met the insured status requirements of the Social Security Act on December 31, 2017. (R. 635.) At the first step, the claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 16, 2012, through her date last insured. 20 C.F.R. § 404.1571 *et seq*. (R. 635.) At the second step, through the date last insured, the claimant had the following severe impairments: obesity, myofascial pain syndrome, alcohol dependence in remission, status post right shoulder surgery, left shoulder impingement disorder, degenerative disc disease, bipolar disorder, anxiety disorder, and depressive disorder. 20 C.F.R. § 404.1520(c); (R. 635.) The medically determinable impairments significantly limited the claimant's ability to perform basic work activities as required by SSR 85-28. (R. 635.)

At the third step, the ALJ determined that neither Lapointe's impairments, nor a combination of her impairments, met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526; (R. 635.) After evaluating the record, the ALJ determined Lapointe's RFC:

> [Lapointe] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b), except the claimant can occasionally push and pull with the bilateral upper extremities; never climb ladders, ropes, and scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, and crouch; occasionally crawl; occasionally reach overhead bilaterally; frequently handle, finger, and feel with the non-dominant right hand; occasionally be exposed to dangerous machinery with moving mechanical parts and unprotected heights; and work with tasks that can be learned by demonstration within 30 days.

(R. 637.) At the fourth step, the ALJ concluded that Lapointe could perform past relevant work as a telephone solicitor because "[t]his work does not require the performance of work-related activities precluded by [her] RFC." 20 C.F.R. § 404.1565; (R. 642.) The ALJ reached this conclusion based on the testimony of a vocational expert who testified that Lapointe "would be able to perform the claimant's past relevant work as a telephone solicitor." (R. 642.) At the fifth step, the ALJ concluded that although Lapointe is capable of performing past relevant work, there are other jobs available in the national economy that she is also able to perform. 20 C.F.R. §§ 404.1520(f), 404.1520(g), 404.1569, 404.1569a; (R. 642-43.) Thus, the ALJ determined that Lapointe was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date of April 16, 2012, through her date last insured. (R. 633, 644.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or contains legal error. *Orn*

*v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the medical record. *Id.* The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ, not this Court, determines credibility, resolves conflicts in medical testimony, and resolves ambiguities. *See Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, the Court must affirm the ALJ's decision even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Finally, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). "An error is harmless if it is 'inconsequential to the ultimate non-disability determination,' or 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less-than-ideal clarity.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004)).

**III.   ANALYSIS**

Lapointe raises two issues for the Court's consideration. First, Lapointe argues that the ALJ improperly evaluated the opinions of treating physician Dr. Katherine Cheeves. (Doc. 14 at 1-2.) Second, she challenges the ALJ's rejection of her symptom testimony. (*Id.*)

### A. Dr. Cheeves's Medical Opinions

"Although an ALJ must consider all the medical evidence in the record, medical opinion sources are separated into three types: (1) treating physicians (who treat a claimant), (2) examining physicians (who examine but do not treat a claimant), and (3) non-examining physicians (who do not examine or treat a claimant)." *Gant v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08234-PCT-MTL, 2022 WL 805291, at *2 (D. Ariz. Mar. 16, 2022); *see Lester*, 81 F.3d at 830. For disability benefit applications filed prior to March 27, 2017, treating medical sources' opinions are given more weight than non-examining sources' opinions due to a treating physician's heightened familiarity with a claimant's condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declines to give controlling weight to a treating source's opinion, the ALJ must consider several factors—including the examining relationship, treating relationship, the length and nature of treatment, supportability, consistency, and specialization, among other factors—in deciding how to weigh each medical opinion. 20 C.F.R. § 404.1527(c). The ALJ must thereafter provide an explanation for the weight given to each medical opinion. 20 C.F.R. § 404.1527(f)(2). Even if certain evidence contradicts a treating physician's opinion, such as another doctor's opinion, the ALJ must provide "specific and legitimate reasons supported by substantial evidence" for rejecting the treating physician's opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Despite the deference generally afforded to treating physicians, the ALJ is not required to rely on them. *Gant*, 2022 WL 805291, at *3. If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record," the ALJ need not give it controlling weight. *Id.*; 20 C.F.R. § 404.1527(c)(2); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). When rejecting a treating physician's testimony, "the ALJ must do more than offer [her] conclusions. [She] must set forth [her] own

interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 631 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Lapointe argues that the ALJ improperly weighed the opinions of Dr. Cheeves, her treating psychiatrist for the past several years. (Doc. 14 at 12-21.) Instead of relying on Dr. Cheeves's seven opinions, the ALJ assigned "partial weight" to Dr. Shelton's consultative examination. (Doc. 14 at 20); (R. 639.) Regarding Dr. Cheeves's opinions, the ALJ stated:

> Little weight is given to the opinions of Dr. Cheeves. On many occasions, Dr. Cheeves opined the claimant was disabled or was unable to sustain employment. (R. 428-39, 543-57, 1005-26, 1047-54, 1346-58.) These statements are on issues reserved to the Commissioner and are inconsistent with Dr. Cheeves own progress notes (noted above) where she repeatedly described the claimant's anxiety and depression as mild. Dr. Cheeves also completed assessment forms in which she opined the claimant had moderate to extreme limitations in most areas of mental functioning as well as substantial limitations regarding absenteeism, efficiency, and staying on task. (R. 507-08, 524-25, 1043-46, 1307-08, 1359-60.) These assessment forms are mere checklists and contain no supporting medical findings or explanations. The conclusions are not supported by Dr. Cheeves's own progress notes where she repeatedly described the claimant's anxiety and depression as mild. Nor are they consistent with the above-noted observations and testing of the consultative examiner. (R. 1081-90.) Furthermore, the activities described above, including completing a certificate to teach yoga, babysitting, socializing with friends and family, using a computer, caring for pets, attending church, and shopping are at odds with the extremely limited functioning asserted by Dr. Cheeves.

(R. 639.)

Plaintiff first argues that "the checklist format of the assessments does not rise to the level of specific and legitimate reasons to reject them." (Doc. 14 at 14.) The Ninth Circuit has explicitly endorsed medical opinions expressed in the form of questionnaires. *See Orn*, 495 F.3d at 629; *see also Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). But an ALJ may properly discount a medical opinion presented as a checkbox form when that opinion is unsupported and inconsistent with the medical provider's own treatment

notes. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Cheeves checked boxes indicating that Lapointe had moderate to extreme limitations in most areas of mental functioning as well as substantial limitations regarding absenteeism, efficiency, and staying on task but did not explain the basis for assessing that degree of limitation in those areas. (R. 507-08, 524-25, 639, 1043-46, 1307-08, 1359-60.) Thus, the ALJ properly determined that the opinions "contain no supporting medical findings or explanations." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (finding that an ALJ may permissibly reject checkbox opinions that do not contain any explanation of their conclusions).

Plaintiff also argues that the ALJ's determination that Dr. Cheeves's treatment notes show only mild depression and anxiety is inconsistent with the record and not supported by substantial evidence because her symptoms are unpredictable and wax and wane over time. (Doc. 14 at 17-18.) The Plaintiff further argues that the "Ninth Circuit has cautioned against plucking notes of improvement from a claimant's mental health treatment records to discount the severity of the claimant's condition." (Doc. 14 at 14.) The Court finds, however, that the ALJ did not cherry pick moments of improvement because the ALJ properly determined that the record as a whole demonstrates that Lapointe's condition improved over the course of her treatment. (R. 543-57, 638, 767, 1049, 1052, 1076-80, 1299, 1302-06, 1345-46, 1348, 1352, 1355-56.) For example, as noted by the ALJ, Dr. Cheeves's treatment notes illustrate instances of improvement to Plaintiff's condition with certain medications and related adjustments. (R. 1356.) Plaintiff's positive response to her medication led Dr. Cheeves to note: "[a]dequate grooming and hygiene. Calm and cooperative. Affect brighter, appears euthymic. Mood is better. Improved functioning, concentration . . . No mania or psychosis. Insight and judgment adequate." (R. 1356.) Further, Lapointe has never been psychiatrically hospitalized, suggesting that her treatment has been relatively conservative and controlled with medication. (R. 638.) Thus, the Court agrees with the ALJ's determination that Lapointe's condition generally improved and was stable on medication and counseling. (R. 543-57, 638, 767, 1049, 1076-80, 1299, 1302-06, 1345-48, 1355.)

Moreover, the ALJ properly determined that Dr. Cheeves's "conclusions are not support[ed] by Dr. Cheeves's own progress notes where she repeatedly described the claimant's anxiety and depression as mild." (Doc. 14 at 14); (R. 639.) The ALJ appropriately gave little weight to Dr. Cheeves's opinions because they were inconsistent with her own observations and reports. *Conway v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02199-PHX-JAT, 2022 WL 1198001 at *2–3 (D. Ariz. Apr. 22, 2022). There were many occasions in which Dr. Cheeves opined that Lapointe was disabled or unable to sustain employment because her anxiety and depression was "marked," meaning "serious limitations," or "severe," but her own treating notes do not support these findings. (R. 507-08, 524-25, 1043-46, 1307-08, 1359-60.) Over the same span of six years as her opinions, Dr. Cheeves often described Lapointe's anxiety and depression as only "mild" and her mood as "mildly depressed." (R. 430-37, 556-57, 638-39, 1018.) Manic symptoms were also described as "mild" throughout Plaintiff's treating history. (R. 550, 638-39, 1012, 1017, 1022.) As an example, Dr. Cheeves treated Plaintiff on February 20, 2019, noting: "Good grooming and hygiene. Pleasant and calm. Affect euthymic. Mood is fairly good, especially given recent interpersonal stressors. Alert. Thoughts are goal directed . . . No mania or psychosis. Insight and judgment adequate." (R. 1358.) Just one month later, however, Dr. Cheeves opined that Lapointe's condition was in the "marked" category for "serious limitations," the "extreme" category for "major limitations," and that Lapointe would be off task for more than 30% of the time during an 8-hour workday. (R. 1359-60.) The ALJ properly determined that these opinions lacked support in the record and that they should not be relied on.

Plaintiff further argues that the different conclusions Dr. Cheeves and Dr. Jonathan Shelton reached as to Lapointe's capacities does not invalidate Dr. Cheeves's opinions. (Doc. 14 at 18.) When weighing a medical opinion, however, the ALJ may consider the consistency of the opinion with other evidence in the record, 20 C.F.R. § 404.1527(b)-(c), and may discredit an opinion that is inconsistent with other medical evidence or other well-supported medical opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

1190, 1195 (9th Cir. 2004). The state agency psychological consultants' opinions that the ALJ relied on over Dr. Cheeves's opinions opined that Lapointe did not have a severe mental impairment. (R. 64-71, 77-82, 639, 717-21, 731-35, 748-56.) Specifically, the ALJ found that Dr. Cheeves's extreme limitations were inconsistent with the observations of consultative examiner, Dr. Shelton, who concluded that Lapointe had no significant limitations to understanding and memory, social interaction, or adaptation—which the ALJ noted was consistent with Lapointe's activities of daily living and the other objective evidence throughout the record which reflected good memory, and appropriate demeanor, hygiene, and grooming. (R. 638-39, 1081-89.) Other than Dr. Shelton, over a four-year timespan, there were at least four other doctors who corroborated his findings that Lapointe's impairments "were not severe." (Doc. 14 at 9 n.4); (R. 66-67, 78-79, 718-19, 748-49.) All of these doctors' opinions were assigned "partial weight" by the ALJ. (Doc. 14 at 9.) Thus, the Court agrees that the ALJ reasonably found Dr. Cheeves's opinion inconsistent with the objective medical evidence and other doctors' assessments.

The Plaintiff argues that the ALJ failed to show, and the record does not demonstrate, that a substantial part of Lapointe's typical day was spent doing activities inconsistent with limitations assessed by Dr. Cheeves, which the Ninth Circuit holds is a prerequisite for a negative credibility determination based on a claimant's activities. (Doc. 14 at 18-19); *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001); *see also Baker v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2390945, at *5 (D. Ariz. 2022) (finding the ALJ erred when rejecting claimant's testimony based on a perceived inconsistency with the claimant's activities.) But "[a] conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford*, 950 F.3d at 1155. Even though the ALJ did not specifically address whether Lapointe's daily activities of "completing a certificate to teach yoga, babysitting, socializing with friends and family, using a computer, caring for pets, attending church, and shopping" occupied a substantial part of her typical day, the Court agrees with the ALJ's decision to give Dr. Cheeves's opinions little weight because they are significantly inconsistent with

Lapointe's ability to engage in those activities at all, let alone for a substantial portion of her day. (R. 638-39). Thus, the ALJ reasonably found Dr. Cheeves's opinion evidence inconsistent with the record as a whole. (Doc. 18 at 5.)

Plaintiff argues the ALJ erred in its evaluation of the record and relies on evidence that allegedly supports Dr. Cheeves's opinion evidence. (Doc. 14 at 12-21.) But Lapointe's request that the Court reweigh the evidence in her favor ignores the extremely deferential "substantial evidence" standard of review. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla." *Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court finds that substantial evidence supports the ALJ's interpretation. *Cunningham v. Soc. Sec. Admin.*, No. CV-19-05334-PHX-MTL, 2020 WL 5698984, at *5 (D. Ariz. Sept. 24, 2020); *see Thomas*, 278 F.3d at 954.

### B.    Lapointe's Symptom Testimony

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Smolen*, 80 F.3d at 1281; *see Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates "whether the claimant has presented objective medical evidence of an impairment 'which could reasonably be expected to produce the pain or symptoms alleged.'" *Garrison*, 759 F.3d at 1014; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15; *see Smolen*, 80 F.3d at 1281. "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* The standard is not whether a reviewing court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Here, the ALJ found that Lapointe's impairments "could reasonably be expected to cause the alleged symptoms" but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 638.)

Plaintiff argues that the ALJ erred by rejecting Plaintiff's testimony on the severity of her symptoms as "not entirely consistent with the medical evidence." (Doc. 14 at 22.) The ALJ correctly discounted Lapointe's allegations because there was reported improvement in her symptoms with treatment. (Doc. 18 at 7); (R. 638.) While it is true that mental health patients may have waxing and waning symptoms in their daily lives, the ALJ noted that the record showed Lapointe's condition generally improved, was stable with medication and counseling, and did not require any inpatient hospitalizations. (R. 543-57, 638, 767, 1049, 1052, 1076-80, 1299, 1302-06, 1345-46, 1348, 1352, 1355-56.) As a specific example, Dr. Cheeves's treatment notes described instances of "[n]o side effects," "[n]o problems with decrease" of her medications, and noted improvement with certain medications and related adjustments. (R. 1302, 1355-56.) This led to positive feedback in Dr. Cheeves's notes, such as "[g]ood grooming and hygiene. Pleasant and cooperative. Affect brighter, more spontaneous but still restricted. Mood is better. Thoughts are goal directed . . . No mania or psychosis. Insight and judgment adequate." (R. 1355.) Further, when this Court reversed and remanded Lapointe's case for further proceedings in 2017, it called attention to "Lapointe's symptoms seem[ing] to worsen when she stopped taking her medications." (R. 767, referring to 430, 547.) The ALJ reasonably concluded that Lapointe overstated the severity of her symptoms based on a review of the objective medical evidence in the record showing improvement.

Plaintiff also argues that the ALJ's conclusion that Lapointe's mental health symptoms were caused by "situational stressors" does not rise to the level of specific, clear, and convincing reasons to reject her symptom testimony. (Doc. 14 at 22.) The Court agrees with the ALJ's conclusion, however, that although Lapointe already had previous substance abuse issues and recurring mental health issues throughout this time, the

downturns in her health did stem from "situational stressors" around life events. (R. 638-40.) The ALJ's conclusion is supported by both Dr. Cheeves's and Counselor Carol Bettino's records and constitutes a specific, clear, and convincing reason to reject Lapointe's symptom testimony. (*Id.*) Ms. Bettino's counseling treatment records illustrate that when Lapointe reported flare ups in her mental health symptoms, these were "usually due" to situational factors, which included her son's substance abuse issues and incarceration. (R. 414-27, 543-57, 638-40, 767, 1030, 1053-54, 1297, 1302-03, 1309-13, 1353-54.) Moreover, when this Court reversed and remanded Lapointe's case for further proceedings in 2017, it called attention to "her records indicat[ing] that Lapointe's anxiety tended to increase with situational stressors, such as her son's substance abuse, her physical health problems, and reported harassment at work." (R. 767, referring to 434, 438, 548, 551, 554-55, 557.) Further, Dr. Cheeves's notes detailed situational stressors, such as: being "[i]n shock with 7-year prison sentence of son, as of today," (R. 1297); "[c]oping with continued stressors including daughter-in-law's loss of 5-month pregnancy" [and] "son's ongoing severe addiction, other son in prison" (R. 1302-03); "[c]oping with sudden death of sister, secondary to head trauma associated with alcohol relapse and untreated bipolar condition" (R. 1017); and being "quite sad with death of mother. Worried about son in prison. Little activity outside the house. Sleeping 10 hours per day. Not on Abilify. No recent psychotherapy because of financial limitations, i.e. co-pay. Anxious a great deal." (R. 1354.) Additionally, Ms. Bettino's treatment notes illustrate that Lapointe stated that "family issues" contributed to Lapointe's stress and anxiety. (R. 1309.) Later, Ms. Bettino's notes asserted "clinical depression, does struggle with anxiety, mostly situational, then becomes overwhelmed." (R. 1311.) Thus, the ALJ reasonably determined that the objective record fail to corroborate the full extent of the frequency and duration of her mental health symptoms.

The Court finds that the ALJ's explanations detailing the inconsistencies between Lapointe's testimony and the objective medical evidence, Lapointe's improvements with treatment, and her increased symptoms based only on situational factors provided specific,

clear, and convincing reasons supported by substantial evidence to reject her symptom testimony. The Court need not discuss the ALJ's use of Lapointe's daily activities since any error in the ALJ's assessment of those is harmless so long as a valid reason for rejecting Lapointe's symptom testimony remains. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

**IV.   CONCLUSION**

Accordingly,

**IT IS ORDERED** affirming the July 5, 2019, decision of the Administrative Law Judge (R. 630-55), as upheld by the Appeals Council on July 27, 2022 (R. 618-25).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and close this case.

Dated this 4th day of August, 2023.

Michael T. Liburdi
United States District Judge